**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

In

MILLENIUM INSTITUTE
FOR ADVANCE NURSING CARE                  Bk # 12-02689(BKT)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

POST CONFIRMATION AMENDED PLAN OF REORGANIZATION

PROPOSED BY THE REORGANIZED DEBTOR

Dated October 8, 2015

1

**A. Introduction.**

THE REORGANIZED DEBTOR , MILLENIUM INSTITUTE FOR ADVANCE NURSING CAR IN (PROPONENT"), through the undersigned legal counselors, have prepared and is disseminating this POST CONFIRMATION AMENDED PLAN OF REORGANIZATION (hereinafter the "AMENDED PLAN") to holders of claims against and interests in Debtor for the purpose of soliciting acceptance of its Plan of Reorganization as amended. The Administrator believes this AMENDED PLAN contains the information that is material, important and necessary for creditors and interest holders to arrive at an informed decision in exercising their right to vote for acceptance of the AMENDED PLAN. As holder of a claim or interest in the Plan of Reorganization confirmed by the Debtor, your acceptance is important. For a class of claims to accept the AMENDED PLAN, acceptances must be filed by at least two thirds in amount and more than one half in number of the Allowed Claims for such class that actually vote on the Plan. A failure to vote on the AMENDED PLAN does not constitute either an acceptance or rejection of the Plan.

**B. Representations.**

NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY

REPRESENTATIONS OR INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE AMENDED PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN REVIEWED OR PASSED UPON BY AN ACCOUNTANT. THE ADMINISTRATOR, NOR THE DEBTOR ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO THE ADMINISTRATOR AND DEBTOR'S BEST KNOWLEDGE, INFORMATION AND BELIEF. THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE COURT'S APPROVAL OF THE DISCLOSURE STATEMENT SUBMITTED BY THE DEBTOR OR THE CONFIRMATION OF THE PLAN OF REORGANIZATION DOES NOT IMPLY THAT THE COURT ENDORSES OR APPROVES THIS AMENDED PLAN, BUT ONLY THAT IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS AND INTEREST HOLDERS TO MAKE INFORMED DECISIONS WHETHER TO APPROVE OR REJECT THE AMENDED PLAN.

**C. Defined Terms.**

Most words or phrases used in this AMENDED PLAN shall have their usual and customary meanings. Some words or phrases when used in the context of the AMENDED Plan with initial capital letters shall have the definitions set forth in the Plan confirmed. Unless otherwise defined, the terms used in the AMENDED PLAN shall have the same meaning as in the Bankruptcy Code or Rules.

**D: DEFINITIONS AND CONSTRUCTION OF TERMS**

For purposes of this AMENDED PLAN, the following terms shall have the

3

meanings specified in this.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"<u>Administrative Claim</u>" shall mean a Claim that was allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a) (1) of the Bankruptcy Code, including, without limitation:

(a)     fees and expenses of Professionals Allowed pursuant to a Final Order entered under Sections 330, 331, or 503 of the Bankruptcy Code incurred up to the date of the entry of confirmation  February 9, 2010, and

(b)     All fees and charges assessed against the Estate pursuant to 28 U.S.C. §1930.

 "<u>Allowed</u>" shall mean, with reference to any Claim:

(a)     a Claim that has been listed by the Debtor in its Schedules, as amended, and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)     a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline,  or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been

4

Allowed (whether in whole or in part) by a Final Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and Allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)     Any Claim expressly Allowed under the Plan or pursuant to the Confirmation Order entered by the Honorable Court on February 17, 2010.

"Banco Popular or BPPR or the Bank" shall mean Banco Popular de Puerto Rico,

"Bankruptcy Case" shall mean the Debtor's Chapter 11 case pending in the Bankruptcy Court.

"Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from Time to time, as applicable to the Bankruptcy Case.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Puerto Rico where the Bankruptcy Case is pending.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. §2075, and any local rules of the Bankruptcy Court.

"Bar Dates" shall mean December 13, 2007 for general claims and February 8, 2008 for governmental unit, fixed as the due date for the filing of proofs of claim by creditors asserting Claims against Debtor, other than governmental units, as stated in the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines" issued by the Clerk of the Bankruptcy Court in  each Debtor's Bankruptcy Case, or otherwise be forever barred from asserting a Claim against Debtor or its property and from voting on the Plan and/or sharing in distributions under the Plan.

 "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Puerto Rico.

"Cash" shall mean lawful currency of the United States of America (including wire

transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

"Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claims Objection Bar Date" shall mean the later of (1) the date that such claim becomes due and payable in accordance with its terms or thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of Debtor's Plan.

"Claims Objection" means the objections to claims that have been or may be filed against the Holders (or purported Holders) of Claims.

"Class" shall mean those classes designated in Article VIII of the Amended Plan.

"Collateral" shall mean (a) any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean March 14, 2014

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Debtor's Chapter 11 Plan as Suplemented pursuant to the provisions of the Bankruptcy Code.

5

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"CRIM" shall mean Centro de Recaudación de Ingresos Municipales.

"Debtor" shall mean   MILLENIUM INSTITUTE FOR ADVANCE NURSING CARE INC.

 "Disclosure Statement" shall mean the disclosure statement relating to the P l a n  o f  R e o r g a n i z a t i o n  d a t e d  M a y  3 ,  2 0 1 3 ,  including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disputed Claim" shall mean:

(a)    If no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)    if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

(c)    A Claim which is a Contingent or Unliquidated Claim.

"Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy

6

Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

"Distribution Record Date" shall mean the Business Day preceding the Effective Date.

"Effective Date" shall mean the date which is ninety days (90) days after the Confirmation Date of the Amended Plan , or if such date is not a Business Day, the next succeeding Business Day.

"Estate" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code and terminated upon entry of the Confirmation Order on March 14, 2014

"Final Decree" shall mean the order of the Court closing Debtor's case after Debtor's estate is fully administered.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and no appeal or petition for *certiorari*, review or rehearing is pending, or (ii) if an appeal, review, re-argument or *certiorari* of the order has been sought, the order has been affirmed or the request for review, re-argument or *certiorari* has been denied and the time to seek a further appeal, review, re-argument or *certiorari* has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

7

"General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under Section 507 of the Bankruptcy Code.

"Holder" shall mean a Person or Entity who holds a Claim or Interest.

"Impaired Class or Interest" shall mean a class or interest as to the holders of which the Plan alters its legal, equitable or contractual rights.

"Internal Revenue Code" shall mean Title 26 of the United States Code, as amended from time to time.

"Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code, except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

"Operating Account" means  any   interest bearing account established and maintained by the Reorganized Debtor for purpose of paying the Post-Effective Date Consummation Expenses and the payments under this A m e n d e d   P l a n .

"Order of Relief" shall mean the date of the entry of the order of relief.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision thereof.

"Petition Date" shall mean April 5, 2012, the date on which Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court, pursuant to the Bankruptcy Code.

"Plan" shall mean the Reorganized Debtor's Amended Plan  without limitation, the Plan Documents, if any, and all exhibits, supplements, appendices and schedules hereto and thereto, either in their present form or as the same may be altered,

8

amended or amended from time to time.

"Plan Documents" shall mean and include such agreements, instruments and documents as may be required to effectuate the terms of this Amended Plan.

"Plan Supplement"; means the documents and designation, including any exhibits to the Plan not included herewith, that the Debtor may file with the Bankruptcy Court on or before the date that is no less than seven (7) days prior to the Confirmation Hearing.

"Post-Effective Date Consummation Expenses" means the sum of reasonable and necessary expenses of the debtor or the Reorganized Debtor incurred after the Effective Date that are necessarily incidental to implementation of the Plan,

"Post-Effective Date Consummation Expenses Reserve" means the monies reserved in an amount estimated in 3% of the funds available as of confirmation date in the distribution account for payment of Post-Effective Date Consummation Expenses incurred to the closing of the case.

"Priority Claims" shall mean any and all Claims (or portions thereof), entitled to priority under Section

507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

"Priority Tax Claims" shall mean any Claim of a governmental unit entitled to priority under Section 507(a) (8) of the Bankruptcy Code.

9

"Professionals" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b) (4) of the Bankruptcy Code.

"*Pro Rata*" shall mean a proportionate share of the total distribution made at any particular time under this Plan to the holders of Allowed Claims in a Class, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claim s in such Class.

"Puerto Rico Assets Portfolio 2013-1 LLC ( PRAPI) **as sucesor to Banco Popular de Puerto Rico.**

"Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007; as such schedules, lists and statements have been or may be supplemented or amended from time to time.

"Secured Claim" shall mean any Claim that is secured by Collateral, to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

## I.     **THE DEBTOR**

10

As part of the reorganization process the debtor in possession filed a
Disclosure Statement and Plan, the disclosure Statement was approved per order
entered December 28, 2012. The Plan of Reorganization was supplemented several
times as the result of negotiations and stipulations by and between Debtor , Banco
Popular(PRAPI) and the IRS, and supplemented was confirmed on March 19, 2014(
Docket #241)

 The plan as confirmed stated that the Effective date of the Plan would be ninety days
(90)(unless otherwise noted in the treatment of each class of claims) following the entry
of an order by the Court confirming the Plan. The Confirmation has previously stated
was March 14, 2015, thus, the effective date of the Plan was June 14, 2014.

## IV. POST  CONFIRMATION PROCESS.

The Plan of Reorganization was filed on May 3, 2013(docket #18) and later amended
on August 18, 2013(docket # 174). An Order finally approving the Disclosure Statement and
confirming the Plan of Reorganization was by this Honorable Court on March 12, 2014(
Docket# 240).The Plan and the order confirming it are dispositions *in rem*. Central
Virginia Community College v. Katz, 546 U.S. 356, 362 (2006)("Bankruptcy jurisdiction,
at its core, is *in rem*."). That is, the confirmed Plan is a binding determination as to all
potential claimants of the liquidation and distribution of a *res* comprised of the property
of the Debtor's bankruptcy estate. Gardner v. New Jersey, 329 U.S. 565, 574(1947) ("The
whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of
interests claimed in a *res*."); 8 Collier on Bankruptcy, ¶ 1141.02 (Alan N.Resnick and
Henry J. Sommer eds.,16th ed. 2010) ("[A]n order confirming a plan is a judgment *in rem*
in the sense that it is a determination of the rights and liabilities created by the plan, binding

11

upon all parties in interest, whether or not they have chosen to appear in the case.

In this sense the plan confirmed is binding on the world, to the extent it touches the debtor, its rights, assets or obligations as of the confirmation date."). In accordance with this *in rem* nature, upon the Plan's confirmation, it became binding on all concerned parties, including, among others, the Debtor and all creditors. 11 U.S.C. § 1141(a) ("Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor"). As to the treatment of claims it addresses, including administrative expense claims, and the disposition of estate assets to satisfy those claims, the Plan is *res judicata*. *Stoll v. Gottlieb*, 305 U.S. 165, 170 (1938) (bankruptcy court order confirming reorganization plan entitled to *res judicata* effect); *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978-79 (1st Cir. 1995) (federal preclusion principles apply to bankruptcy court's plan confirmation order); *Ortega Calderon v. CitiMortgage*, Inc., 437 B.R. 25, 30-31 (D.P.R. 2010) and cases cited ("It has long been settled that an order confirming a plan is to be given *res judicata* effect."); *Factors Funding Co. v. Fili* (In re Fili), 257 B.R. 370 (B.A.P. 1st Cir. 2001) ("Plan confirmation is a final order, with *res judicata* effect, and is imbued with the strong policy favoring finality.").

As to any claim that is treated by a confirmed plan, the plan essentially substitutes a new claim for the old. Dale C. Eckert Corp. v. Orange Tree Assocs. Ltd. (In re Orange Tree Asoc. Ltd.), 961 F.2d 1445, 1448 (9th Cir. 1992) (confirmation of chapter 11 plan substitutes the obligations imposed by the plan for pre confirmation

debt); *DiBerto v. The Meadows at Marbury Inc.* (In re DiBerto), 171 B.R. 461, 471 (Bankr. D.N.H. 1994).

Although the debtor commenced with the payment to Priority Claims and secured creditor PRAPI unforeseeable events affected debtor's ability to timely make payments as provided for in the Confirmed Plan.   Notwithstanding as of the date of the filing of the present response the fees to the US Trustee are current and all monthly reports of operation have been timely filed.

Management as stated in the plan assumed the business operations of the Reorganized debtor and the distribution as determined under the plan was commenced.

To that effect the Debtor in two occasion and at the time of said filing was up to date with the payment plan provisions filed a request for entry of a Final Decree.  Although no timely objection was filed a creditors in the case, PRAPI did untimely file an objection to the request for entry of a Final Decree basically claiming that the case had not been fully administered and the Court denied Debtor's request for the entry of Final Decree.( dockets # 257,263,265,270,271,272,,272,276) .

Thus the case has not been substantially consummated and thus the Debtor may propose to modify the confirmed plan as provide by the provisions of section 1127(b) of title 11 USCA.

At the time of the confirmation of the Plan, the Debtor facilities were inspected by officer from Medicare, who reported several issues as to compliance with the Agency. Although the Debtor did comply with the corrections requested by Medicare, the Agency cancelled the license, yet allowed the Debtor to request the renewal of the same.

13

At the time of confirmation the renewal process had been commended, unfortunately the renewal process took longer than anticipated more than eight months, time during which the Reorganized Debtor was not allowed to receive Medicare patients and thus its project cash flow presented in support of the Confirmation of the Plan dwindle considerably and thus affecting Debtor's ability to continue making payments in an orderly fashion and as provided in the plan. Notwithstanding such cash shortcoming the Debtor has been able to keep the facility open and in operation, duly complying with all local health regulations.

Additionally as required by Medicare the Debtor had to invest in the renovation and installation of a new fire protection system, as well as certain equipment required by the Medicare licensee renewal process.  That additional and not anticipated expenses affected the already reduced monthly income.   In order to confront such reduction the Debtor had to reduce considerably its employees and payroll expenses.

 Debtor was finally awarded the Medicare License and once again is accepting although in a limited manner new Medicare patients and as well as in the  process of renegotiating the payment to priority creditors which are in arrears due to the reduction in the income on account of the cancellation of the Medicare License .

As it stands the Reorganized Debtor has experience and overcome substantial and unanticipated discrepancies and or change in the income flow originally submitted in the Disclosure Statement and Plan of Reorganization which has temporally render the distribution agreed in the plan to be insufficiently funded to comply with the terms originally confirmed by the Court.

# V.  SOURCE OF CASH FOR PLAN DISTRIBUTIONS AND IMPLEMENTATION  STATED IN THE CONFIRMED PLAN

14

The reorganized debtor has obtained the Medicare authorization and as such is once again receiving Medicare Patients.(see exhibits A )

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims, other than Administrative Expense Claims and Priority Tax Claims shall be classified for all purposes, including voting on, confirmation of, and distribution pursuant to the Plan, as follows:

Class 1- Priority Claims Class 1 shall consist of all Allowed Priority Claims.

Class 2- Secured Claim of Popular. Class 2 shall consist of the Allowed Secured Claim of Banco Popular de Puerto Rico

Class 3- Secured Claim of Small Business. Class 3 shall consist of the Allowed Secured Claim of Small Business.

Class 4- Secured Claim of Evangelina Millan

Class 5- - General Unsecured Claims.  Class 4 shall consist of all Allowed General Unsecured Claims.

Class 6- Contingent, liquidated claims. Shall consist of complaints filed for damages and alleged malpractice which at the time of the filing were pending and thus stayed by the filing of the petition and in which at the time of the filing and or before the confirmation of the Plan no judgment has been entered against the Debtor.

Class 7  Stockholder. Class 5 shall consist of Mr. Juan Jose Rodriguez and wife Stockholders of the corporation

15

Article III

==AMENDED== PLAN OF REORGANIZATION

**A. Treatment of Priority Claims.**

1. *Priority Claims.*

Administrative Claims: The debtor must pay a quarterly fee to the United States
Trustee for each quarter and Debtor has been paying said fees to US Trustee.
All administrative claims are subject to allowance by the Bankruptcy Court and its
determination of the reasonableness of the amounts; any party in interest can object to
any claim for administrative fees and expenses.

The holders of Allowed Claims which are Administrative Claims shall receive, on
account of such claims, cash in the amount of such claims (I) as soon as practical on or
after the Effective Date or (ii) at the option of the Debtor, in accordance with the
ordinary business terms of payment of such claims.

Any other Administrative Expense not paid in the normal course of business
operation as of the time of the entry of an order confirming the Plan.

Professionals employed at the expense of the estate of the Debtor and entities who
may be entitled to reimbursement or the allowance of fees and expenses from the estate
of the Debtor pursuant to subparagraphs (2) through (6) of section 503(b) of the
Bankruptcy Code, shall receive cash in the amount awarded to such professionals and
entities at such times and only in accordance with a final order entered pursuant to '330
or '503(b)(2) through (6)  of the Bankruptcy Code.

16

2. *Class 1*A (unsecured taxes).   Class 1 A consists of unsecured tax claims held by the

Commonwealth of Puerto Rico  that are entitled to priority pursuant to 507(a)(8)  of

the Code in the amount of $192,008[1]. These claims may constitute Class 1 A and

deemed unsecured, as the Plan contemplates. Each holder of a Class 1 Allowed Claim

shall receive an unsecured promissory note in the allowed amount of the claim,

bearing interest at a fixed rate of 3.25 %, or such other interest rate as the

Bankruptcy Court determines is required by the Bankruptcy Code. The Debtor

entered into a stipulation prior to the confirmation of the Reorganization Plan

whereby it was agreed that the monies retained from the payment made by the

Health Plan and which amounted to approximately $700,000.00 would be set off

against the balance owed.  Said stipulation was approved by the Court per order

dated July 23, 2013 ( docket # 151) As part of the present modification the Debtor

has tendered to the Treasury through its counsel Lic. Rodriguez  evidence of

additional funds retained  by the Treasury department, thus upon the set off of those

additional funds, the amount of $192,008 would be paid in full.


3. *Class 1B* (Internal Revenue Taxes). Class 1B consists of the unsecured tax claim  in

*the amount of $ 385,472.00*  held by the Internal revenue Service that are entitled to

priority pursuant to 507(a)(8).  Each holder of a Class 1B Allowed Claim shall receive

---

1 At the time of filing of the petition Hacienda hold in custody an amount in excess of $500,000.00 for
taxes withheld by the Health Plan and deposited with Hacienda.

17

an unsecured promissory note in the allowed amount of the claim bearing interest at a fixed rate of 3.25%, or such other interest rate as the Bankruptcy Court determines is required by the Bankruptcy Code. Each note shall be payable in sixty(60) monthly installments of principal along with accrued interests, commencing the first day of

the month immediately following the month of the Effective Date. The note is subject to prepayment at any time without penalty or premium and shall have such other terms as are usual and customary for promissory notes. The Debtor has entered into a payment plan with the IRS concerning the amount owed, thus the Plan as modified concerning the IRS complies with the provisions of section 1121 through 1129.

*4. Class 1C CRIM* consists of the unsecured property tax claim in *the amount of $ 10,147.00* held by CRIM that is entitled to priority pursuant to 507(a)(8). Each holder of a Class Allowed Claim shall receive an unsecured promissory note in the allowed amount of the claim bearing interest at a fixed rate of 3.25%, or such other interest rate as the Bankruptcy Court determines is required by the Bankruptcy Code. Each note shall be payable in sixty(60) monthly installments of principal along with accrued interests, commencing the first day of the month immediately following the month of the Effective Date. The note is subject to prepayment at any time without penalty or premium and shall have such other terms as are usual and customary for promissory notes. The Debtor has entered into a payment plan directly with CRIM and is making payments accordingly.

**B. Treatment of Secured Claims.**

1. *Class 2- Banco Popular de Puerto Rico (BPPR)* is owed the amount of $1,879,151.00.

BPPR shall retain all of its mortgages, security interest, contractual and

legal rights, except as modified herein.

A Stipulation was executed in previous chapter 11 case which was confirmed and closed. Such stipulation contemplated payments to the secured portion of the debt of 21,231.00 or principal and interest. Enclosed is a table reflecting all payments to the bank since the approval of the stipulation in January 1, 2010 up to October 2014. The principal balance according to Debtor's books is $1,212540.39

It is anticipated that Debtor will repay the outstanding allowed secured claim in seventy five monthly installments of $21,231.00( See exhibit # B)

### Impairment and Voting

BPPR's claim is unimpaired under the Plan, thus BPPR is deemed to have accepted the Plan as proposed.

2.*Class 3 Small Business Administration( Marketing Development Corporation*)The allowed secured claim will be restructured to a twelve (12) year repayment plan with interest at the rate of 1%. Debtor shall make monthly payments of $7,482.00 for principal and interest. Debtor is making payments as agreed with the secured creditor.

3. Class 4. *Secured claim of Evangelina Millan*. This claim consists of a secured claim in the amount of $239,327.00. This amount is the balance of the purchase price of a lot of land bought by Millennium. The allowed claim shall be paid in full as originally agreed to in the purchase agreement .Debtor will continue its monthly payment of $3,989.00. Debtor has continued to make secured payment to the claimant.

### Impairment and Voting

This claim is unimpaired under the Plan, thus BPPR is deemed to have accepted the Plan as proposed.

### C. Unsecured Claims.

1.  *Class 5* shall consist of *unsecured claims, of less than $10,000.00  the* holders of which would not have recourse against the debtor outside of the context of a Chapter 11 case, or which do not also hold Allowed Secured Claims requiring the holder to first pursue its available remedies against the Property, including all trade debt. According to the original Plan this class  was to  be paid in full on the effective date of the Plan.  Under the modified Post Confirmation Plan , this Class will be paid in full ninety days(90) after the entry of the Order authorizing the Post Confirmation Modification.

    *Impairment and voting*

    *This claim is unimpaired under the Plan and is deemed to have accepted the Plan.*

2.  Class 6 , Unsecured claims of more than $10,000.00 , the holders of which would not have recourse against the debtor outside  of the context of Chapter 11 case.  According to the debtor, these unsecured claims the holders of the Class 6 amount to $773,109.00.  Allowed Claims shall be  receive a dividend equal to 90% of their allowed claim in monthly installments commencing ninety(90) days after the entry of the Order authorizing the Post Confirmation Modification .

    Impairment and voting

This claim is impaired under the Plan; therefore pursuant to section 1126(f) of the Bankruptcy Court is impaired and thus entitled to vote.

3.   Class 7 Contingent, *unliquidated claims.* Consist of claims for damages which at the time of the filing of the petition were pending and thus stayed. NO judgment has been entered or had been entered at the time of the filing of the present Disclosure Statement and or confirmation. This Class shall not receive payment from the debtor. None the less the direct action against the insurance companies

is not impaired by the filing of the present petition under Chapter 11, nor the present filing stays such action against third party insurers.

### Impairment and Voting

This Class shall not receive any property under the plan, thus is deemed to have rejected the plan.

### D. Treatment of Interests.

Class 7 (Stockholder) consist of the stockholders of the corporation Dr. Juan Jose Rodriguez and wife. They will not receive or retain any property under the Plan.

**E.) <u>Post confirmation expenses</u>** (Consummation expenses) pursuant to *§503(b)(1)(a)*, administrative expenses  only include the "actual, necessary costs and expenses of preserving the estate . . . ." the code is "silent as to the point in time at which the expenses of a debtor in a reorganization case cease to be accorded first priority administrative expense status." *In re Tri-l corp., 65 B.R. 774, 777 (Bankr. D. Utah 1986)* (citing *In re Frank Meador Buick, Inc., 59 B.R. 787, 791 (Bankr. W.D. Va.1986))*. In many cases, claims that accrue post-confirmation cannot be classified as administrative expenses because the estate ceases to exist upon confirmation; therefore there is no estate to preserve. *In re Worldcom, 401 BR. at 651* (citing *In re Frank Meador Buick Inc., 65 B.R. 200, 203 (W.D. Va. 1986))* an estate typically ceases to exist beyond plan confirmation because pursuant to *11 U.S.C. § 1141(b)* "except as provided in the plan or the order confirming the plan, the confirmation of a plan vests all property of the estate in the debtor. In this particular case the plan provided for the appointment of a liquidating trustee and Reorganized Debtor, who upon its appointment would be vested with the administration of the property as provided in the plan, thus upon Confirmation of this case there was no longer an estate nor expenses incurred by the Reorganized  Debtor. The total amount of said post confirmation "administrative expenses" (Consummation expenses)  is fixed in

the amount of $785,000.00.   These are expenses and services provided up to the date of the sale of Hospital facilities, but after the entry of the confirmation order, which were allowed by the Court as Administrative Expenses.( although  a Bankruptcy Estate no longer existed)

(F)   **U.S.  TRUSTEE'S  FEES** .  Any pending United States trustee's quarterly fees shall be paid in full pursuant to 11 U.S.C. § 1930 on or before the effective date.   All U.S. Trustee fees incurred to this date have been paid by the Reorganized Debtor.

(G)   **Professional compensation and expense reimbursement claims.**

This class consists of those professionals retained by the debtor who filed a request for allowance of administrative for services provided to the estate and the was approved.

(H)_:  Unclassified post-petition claims_

The holders of which would not have recourse against the debtor, nor the reorganized Debtor nor the Estate  since the claims were incurred after the filing of the petition but no request for allowance as administrative expense was filed or granted.  This claim shall receive no dividends

**ARTICLE IX:**

Means for Executing the Amended Plan:

The Reorganized Debtor states as follows   available   funds for distribution to creditors. ( See exhibit # C)

THE REORGANIZED DEBTOR DISCLOSES THAT THE REORGANIZED DEBTOR IS INSOLVENT, YET THE PLAN AS PROPOSED PROVIDES A SUBSTANTIAL DISTRIBUTION OF THE PRIORITY AND ADMINISTRATIVE

22

CLAIMANTS WHO AGREE AND CONSENT TO A DIFFERENT AND LESS
FAVORABLE TREATMENT AS PROPOSED IN THE CONFIRMED PLAN.
TO THAT EFFECT IMPAIRED CLAIMANTS AS DEFINED HEREIN ARE
ENTITLED TO VOTE.

### G. Confirmation Possible Where Class Does Not Accept.

The Court will be asked to confirm as to any class of claims or interests that does
not accept the Plan. To do so, the Court must find that the Plan: (1) is fair and
equitable with respect to each class of claims or interests that is impaired and as
not accepted the Plan; and (2) that each holder of a claim or interest receives or
retains under the Plan, on account of such claim or interest, property of a value, as
of the Effective Date of the Plan, that is not less than the amount that would be
received or retained if the Debtor's property were liquidated under Chapter 7 of
Title 11 of the Code.    The Reorganized Debtor believes the requirements for
confirmation are satisfied with respect to any class that might not accept the Plan.

If a class of unsecured claims does not accept the Plan and they are not paid in full
with a market rate of interest, the fair and equitable requirement of the Code provides
that no junior class of interests can receive or retain any property under the Plan
on account of their interests. Debtor believes this requirement is satisfied by the Plan
because, in the event an unsecured class fails to accept the Plan, upon confirmation
of the order entered on February 9, 2010, all equity interest was cancelled.

THE FOREGOING IS A SUMMARY OF THE PLAN AND CREDITORS ARE
URGED TO READ THE PLAN IN FULL. CREDITORS SHOULD CONSULT
WITH COUNSEL IN ORDER FULLY TO UNDERSTAND THE PLAN,
WHICH IS A PROPOSED LEGALLY BINDING AGREEMENT BY THE
REORGANIZED DEBTOR ECAUSE REORGANIZED DEBTOR EXPRESSES

NO TAX ADVICE, IN NO EVENT WILL THE REORGANIZED DEBTOR OR ANY AFFILIATES PROFESSIONAL ADVISORS ENGAGED BY ANY OF THEM BE LIABLE IF, FOR ANY REASON, THE TAX CONSEQUENCES OF THE PLAN OR AN ADDITIONAL CAPITAL CONTRIBUTION ARE OTHER THAN AS ANTICIPATED. CREDITORS AND INTEREST HOLDERS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THIS PLAN.

**I HEREBY CERTIFY, that on this same date I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, which will send notification to the, U.S. Trustee's Office, and any other party that has requested notice, including PRAPI, the objecting creditor.**

## <u>NOTICE</u>

**Within twenty one (21) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 2002(5) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.**

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico this 16th day of October 2015

S/ Dr. Juan Jose Rodríguez
President
Reorganized Debtor

S/ISABEL M FULLANA
GARCIA-ARREGUI & FULLANA
252 PONCE DE LEON AVE
SAN JUAN, PR 00918
TEL 787 766 2530
FAX787 756-7800
Email : isabelfullana@gmail.com