IN THE UNITED STATES BANKCRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE MILLENNIUM INSTITUTE FOR ANC, INC.<br><br>Debtor | Case No.: 12-02689 BKT<br><br>Chapter 11 |

**MOTION REQUESTING ENTRY OF CONTEMPT ORDER AGAINST PRAPI, SANCTIONS AND INTERIM STAY ORDER**

**TO THE HONORABLE COURT:**

COMES NOW, the debtor, **THE MILLENIUM INSTITUTE FOR ANC, INC.** ("Debtor" or "Reorganized Debtor" hereinafter), represented by the undersigned counsels, and very respectfully states, prays and requests:

**I.     PRELIMINARY STATEMENT**

1.1     The Reorganized Debtor hereby moves this Court to enter a contempt order against PR Asset Portfolio 2013-1 International LLC ("PRAPI" hereinafter) for violation of the Confirmation Order entered by this Court on March 19, 2014 [Docket No. 241].

1.2     On May 29, 2015, over a year after the Debtor's Plan of Reorganization was confirmed, PRAPI filed a complaint in state court in San Juan to collect pre-petition debt which was discharged by the Confirmation Order of this Court. As it will be discussed herein under, PRAPI receive proper notice of the Court's Confirmation Order, yet PRAPI has shown a blatant and reckless disregard to such Order, and has deliberately and willfully violated this Court's Order. This type of conduct has hindered the Debtor's fresh start and is punishable by contempt proceedings.

1.3     Therefore, the Debtor's invokes this Court's equitable powers, bestowed by Section 105(a) of the Bankruptcy Code, and to find PRAPI in contempt of Court, and that

it imposes on such creditor sanctions, attorney's fees, and punitive damages. Additionally, the Debtor requests a temporary stay order, in order to stay PRAPI from proceeding against the Reorganized Debtor until this contested matter is resolved by this Court.

## II. JURISDICTION AND LEGAL BASIS

2.1 The Bankruptcy Code does not provide an express statutory remedy for violations of a discharge order. Nevertheless, it has been recognized by federal courts that a debtor may enforce the discharge injunction through contempt proceedings through the equity powers given to bankruptcy courts by Section 105(a) of the Bankruptcy Code. Barrientos v. Wells Fargo Bank N.A., 633 F.3d 1186 (9th Cir. 2011). "Legally speaking, civil contempt sanctions for violation of the discharge injunction must be sought by contested matter rather than an adversary proceeding" Green Point Credit LLC v. Mc Lean (In re: McLean), 794 F.3d 1313, 1326 (11th Cir. 2015).

2.2 According to Rule 9020, contempt proceedings in Bankruptcy Court are governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure, as "actions to enforce the discharge injunction and to seek sanctions on account of discharge injunction violations must be brought as contested matters and not by way of adversary proceedings". Tenczar v. Gable (In re: Tenczar), 466 B.R. 32, 36 (Bankr. D. Mass. 2012).

2.3 Additionally, Section 105(a) of the Bankruptcy Court has been interpreted to allow courts to hold violating creditors in contempt and award monetary damages, punitive damages, and attorney's fees. In re: Hardy, 97 F.3d 1384, 1389 (11th Cir. 1996); In re: Wassem, 456 B.R. 566, 568 (Bankr. M.D. Fla. 2009), In re: Hebner, 2015 Bankr. LEXIS 48; and In re: Ashley, (Bankr. N.D. Ala. Sept. 6, 2012). Green Point Credit LLC v. Mc Lean (In re: McLean), 794 F.3d 1313 (11th Cir. 2015).

### III. RELEVANT FACTS

3.1 The above captioned Debtor filed its first chapter 11 petition for bankruptcy relief on July 28, 2008. [Docket No. 1 of Case No. 08-04767].

3.2 In that first case, Banco Popular de Puerto Rico ("BPPR") filed a secured claim for $2,359,013.39 [Claim No. 38 of Case No. 08-04767].

3.3 On December 24, 2009 the Debtor filed an Amended Chapter 11 Plan of Reorganization [Docket No. 222 of Case No. 08-04767]. The aforesaid Plan contemplated that the only amount owed to BPPR was $1,878,151.00 payable in monthly installments of $21,231.00, with a fix interest rate of 5% for twelve (12) years. This Plan was confirmed by this Court through the order filed and entered on March 2, 2010 [Docket No. 252 of Case No. 08-04767].

3.4 Later on, on April 5, 2012 the present chapter 11 bankruptcy case was filed. [Docket No. 1], and BPPR filed Proof of Claim No. 4, which was later amended [Claim No. 4-2].

3.5 On June 13, 2013, prior to the confirmation of the Debtor's Plan, BPPR transferred its claim to PRAPI. Hence, PRAPI became BPPR's successor in interest and holder of Claim No. 4.

3.6 On November 15, 2012, the Debtor filed its original Chapter 11 Plan of Reorganization [Docket No. 81], which was later amended [Docket No. 118], and supplemented by a "Joint Modification to Supplement the Amended Plan of Reorganization" filed by the Debtor and PRAPI [Docket No. 174].

3.7 Under the terms of the aforesaid Joint Modification the Debtor was to continue making payments to PRAPI in the same terms as in the Old Plan [Docket No.

3

222 of Case No. 08-04767], the only modification was that an acceleration clause was added in case of default.

3.8     This Court approved the Amended Plan, as supplemented, on March 19, 2014 [Docket No. 241]. This Order was notified to all creditors, **including PRAPI**, on March 21, 2014. [Docket No. 243].

3.9     During 2014 the Debtor's license to receive and service Medicare patients was temporarily revoked, and the Debtor suffered a significant reduction in its revenues, thus, defaulted in its payments under the Confirmed Plan.

3.10    On January 28, 2015, PRAPI sent a collection letter to the Debtor in which it acknowledges that the Plan of Reorganization was confirmed, and admits that the Debtor sole obligation towards them is the debt listed in the Confirmed Plan. [Docket No. 306-1, page 57].

3.11    Notwithstanding said acknowledgment, PRAPI filed a complaint in State Court on May 29, 2015, in which it requested to foreclose on its collateral in order to collect the entire pre-petition obligations which were discharged by this Honorable Court. This issue of fact is not in dispute as PRAPI admitted this fact in a prior motion [Docket No. 306, page 3, ¶11], and submitted a copy of the complaint as an exhibit. [See Docket No. 306-1].

IV.     **VIOLATION TO DISCHARGE INJUNCTION**

4.1     The Supreme Court of the United States stated in <u>Stellwagen v. Clum</u>, that:

> "The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, **intends to aid the unfortunate debtor by giving him a fresh start in life**, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors. Our decisions lay great stress upon this feature of the law -- as one not only

4

of private but of **great public interest in that it secures to the unfortunate debtor**, who surrenders his property for distribution, a new opportunity in life." Stellwagen v. Clum, 245 U.S. 605, 617 (1918) (Emphasis was added).

4.2     The Bankruptcy Code provides for two (2) fundamental keys that allow courts promote and enforce the purpose of our bankruptcy system; these are: the automatic stay, and the discharge injunction. Hotel Airport, Inc. v. Best Westen (In re: Hotel Airport Inc.), 2014 Bankr. LEXIS 3990 (Bankr. D.P.R. 2014). "The automatic stay has broad application and prevents creditors from seeking to collect a pre-petition debt from debtors or assets of a debtor's bankruptcy estate. The discharge injunction safeguards the "fresh start" of debtors by **permanently** enjoining creditors from collecting discharged debts." *Id*. [Emphasis was added].

4.3     Section 1141(d)(1)(A) of the Bankruptcy Code governs the effect of confirmation in Chapter 11 bankruptcy cases. According to the aforesaid section, the confirmation of a plan discharges the debtor from debts that arose before the date of confirmation unless the plan or order of confirmation provides otherwise. *Id*.  In Chapter 11 cases, confirmation immediately discharges corporate and partnership debtors from all debts that arose prior to the date of confirmation, and replaces those debts with the obligations assumed in the plan. *Id*.

4.4     Under the Chapter 11 scheme the Debtor must provide through a plan of reorganization the payment of claims in existence as of its confirmation. Castillo v. Fundación Dr. Manuel de la Pila (In re: Fundacion Dr. Manuel de la Pila), 2011 Bankr. LEXIS 953 (B.A.P. 1st Cir. 2011).  If this plan of reorganization is confirmed by the court, by virtue of Section 1141 of the Bankruptcy Code, the debtor is discharged of all pre-petition obligations not dealt with in the confirmed plan. "The provisions of a confirmed

5

plan bind the debtor any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 USC §1141.

4.5 The confirmation of a plan has a re*s judicata* effect and cannot be subject to collateral attack. Calderon v. CitiMortgage (In re: Calderon), 437 B.R. 25, 30 (Appeal to D.P.R. 2010). See also Monach Life Insurance v. Ropes & Gray, 65 F.3d 973, 978 (1st Cir. 1995).

4.6 "[A]n order confirming a plan is a judgment *in rem* in the sense that it is a determination of the rights and liabilities created by the plan, binding upon all parties in interest, whether or not they have chosen to appear in the case. In this sense, the plan is binding on the world, to the extent it touches the debtor, its rights, assets or obligations as of the confirmation date." Castillo v. Fundación Dr. Manuel de la Pila (In re: Fundacion Dr. Manuel de la Pila), 2011 Bankr. LEXIS 953 (B.A.P. 1st Cir. 2011). In accordance with this *in rem* nature, vested to the Plan upon its confirmation, the terms of the plan become binding on all concerned parties, including, among others, the Debtor and all creditors. *Id*. discussing 11 U.S.C. § 1141(a).

4.7 When a Plan if confirmed it essentially substitutes a new claim for the old one, it substitutes the pre-petition debt for the obligations imposed by the plan. Dale C. Eckert Corp. v. Orange Tree Assocs., Ltd. (In re Orange Tree Assocs., Ltd.), 961 F.2d 1445, 1448 (9th Cir. 1992). Once the Chapter 11 Plan is confirmed the former legal relationships between a debtor and its creditors are extinguished and replaced by new the obligations outlines in the confirmed plan. DiBerto v. The Meadows at Marbury, Inc. (In re DiBerto),

6

171 B.R. 461, 471 (Bankr. D.N.H. 1994). This provides new rights to creditors that replaces and supersedes their original claim, thus, the confirmed plan provides a new binding contract between the debtor and its creditors. In re Henderberg, 108 B.R. 407, 412 (Bankr. N.D.N.Y. 1989).

    4.8    This new contract represents the debtor's sole obligation to its creditors, as the debts or property not dealt with in the plan are **discharged** upon the confirmation of the plan, unless the plan contemplates liquidation or the debtor is an individual. "Section 524 of the Bankruptcy Code incorporates the discharge provisions of Section 1141 and governs the effect of the discharge. Under §524(a)(2), a discharge operates as an injunction against the enforcement of any discharged debt as personal liability of the debtor, including the continuation of legal process, offsets, or other collection efforts against the debtor." Hotel Airport, Inc. v. Best Westen (In re: Hotel Airport Inc.), 2014 Bankr. LEXIS 3990, 57 (Bankr. D.P.R. 2014).

    4.9    Therefore, even though PRAPI filed a proof of claim for secured claim of $3,122,375.73 [Proof of Claim No. 4-2]. Upon the confirmation of the Debtor's Plan, **PRAPI's claim was extinguished** and replaced with the obligation set forth in the Confirmed Plan, which was $1,878,151.00 payable in monthly payable in monthly installments of $21,231.00, with a fix interest rate of 5% for twelve (12) years. **PRAPI can claim no more nor any less**. Even though PRAPI's pre-confirmation claims gave them the right to a higher interest rate and to collect attorney's fees in case of a foreclosure proceeding, these rights were not preserved by the confirmed plan, thus, **they were forever extinguished**.

    4.10    Regardless of the loans and mortgage notes subscribed by the Debtor in favor of PRAPI (or its predecessor, BPPR), as of March 2, 2010 (date in which the Old

7

Plan was confirmed), the Debtor does not owe PRAPI anything more than $1,878,151.00, which the Debtor has been paying up until October 2014. Therefore, the fact that PRAPI recently filed a complaint in state court to collect all pre-confirmation obligations of the Debtor is a violation of the Confirmation Order, which constitutes a permanent injunction, and such violation is punishable through a contempt proceeding.

## V. DEFAULT ON THE CONFIRMED PLAN DOES NOT REVIVE PRE-CONFIRMATION OBLIGATIONS

5.1 PRAPI argues that because default on the terms of the Confirmed Plan, it is entitled to collect the discharged obligation. Nevertheless, PRAPI's legal theory is contradicted by a heap of bankruptcy case law. The *res judicata* effect of a confirmed plan is final, and even if the case is later dismissed or converted to a Chapter 7, the confirmation order is not revoked, nor are pre-petition debts revived. *See* National City Bank v. Troutman Enters. (In re: Troutman Enters.), 253 B.R. 8, 11 (B.A.P. 6th Cir. 2000); Bankr of Louisiana v. Pavlovish (In re: Pavloich), 952 F.2d 114 (5th Cir. 1992); In re: Ramirez, 188 B.R. 413, 415 (B.A.P. 9th Cir. 1995).

5.2 It has been stated by bankruptcy courts that "[i]f a reorganized debtor defaults under a reorganization plan, plan claim creditors can initiate an action for breach of contract in a proper court and, if successful, enforce their contractual rights in any assets of the reorganized debtor." Murdock v. Holquin, (In re: Holquin), 323 B.R. 275, 282 (Bankr. N.D. Cal. 2005).

5.3 Consequently, even if the Debtor defaulted in its payment to PRAPI, PRAPI may only enforce the contractual rights established under the Confirmed Plan. The Confirmation Order constitutes a permanent injunction that forever binds PRAPI, and the fact that PRAPI is coercing the Debtor to collect pre-petition obligations constitutes

8

contempt of court and, thus, the Debtor moves this Court to enforce its order and to provide compensation to the Debtor.

5.4 Furthermore, PRAPI's contention that default on the terms of the Plan revives the discharge debt is not even supported by non-bankruptcy law. As it was previously discussed, the confirmed plan operates as a new binding contract that substitutes the pre-petition obligations for those obligations contemplated in the Plan, thus, the confirmed plan is a settlement agreement between the debtor and its creditors. Pursuant to Puerto Rico's contract law, settlement agreement also have a *res judicata* effect, for which default on the contract does not revive the previous obligations. Therefore, upon default, a creditor can only claim the new obligation, never the old one. Neca Mortgage Corp. v. A&W Developers, 137 DPR 860, 871 (1995).

## VI. LEGAL STANDARD FOR VIOLATION OF DISCHARGE ORDER

6.1 Within First Circuit it has been established that the standard in contempt proceedings for violation of the discharge injunction is an objective one; and has established a two (2) prong tests outlined in Collings v. Wealthbridge Mortg. Corp. (In re: Collins), 474 B.R. 317, 320 (Bankr. D. Maine 2012):

> A creditor violates the discharge injunction when it: **(1) commits an act that violates the discharge injunction with the general intent to commit the act and (2) acts with knowledge of the discharge order**. See In re Schlichtmann, 375 B.R. at 96; Pratt, 462 F.3d at 19. To be contumacious, the creditor's action must operate to coerce or harass the debtor improperly. See id. The First Circuit Court of Appeals defined the "objectively coercive" standard in Pratt v. Gen. Motors stating that "even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts." 462 F.3d at 19. While there appears to be no parallel First Circuit definition for harassment, Congress clearly intended that any behavior engaged in by a creditor that pressures a debtor to repay a discharged debt in any way is prohibited by §524.

9

6.2 Hence, **the creditor's subjective intent of beliefs are irrelevant**. In re: Hardy, 97 F.3d 1384, 1390 (11th Cir. 1996). Following and discussing this two prong test, it has also been established within the Bankruptcy District of Puerto Rico that:

> "a debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, **only that the creditor's actions had a coercive effect upon the debtor.**" *Id. at 7* (citations omitted). ²In other words, a creditor need not orchestrate every part of a possible violation of the discharge injunction, nor must it act in bad faith in order for a court to find that its actions were objectively coercive." *Stone v. Highlands Fuel Delivery, LLC (In re Stone), 2014 Bankr. LEXIS 1227 at \*13, 2014 WL 1308814 at \*4 (Bankr. D.N.H. 2014),* citing *Pratt, 462 F.3d at 19*. The foregoing is also applicable to creditor's attorneys." Hotel Airport, Inc. v. Best Westen (In re: Hotel Airport Inc.), 2014 Bankr. LEXIS 3990 (Bankr. D.P.R. 2014). [Emphasis was added].

6.3 The case at bar squarely fits and meets this two prong test. The documental evidence submitted by PRAPI itself and the documents in the case docket renders it so. PRAPI was properly notified of the Confirmation Order in this case [See Certificate of Service issued by the Clerk of the Court, Docket No. 243]. Additionally, prior to the filing of the complaint in state court, PRAPI sent a collection letter to the Debtor acknowledging that the Debtor's Plan of Reorganization was confirmed [Docket No. 306-1]. In fact, in the complaint itself PRAPI pleaded, as a matter of fact, that the Plan was confirmed and attached a copy of the Plan and Confirmation order as exhibits to the Complaint.

6.4 Additionally, in PRAPI's motion titled "Opposition to Post-Confirmation Modification of Chapter 11 Plan", PRAPI asserted that a complaint was filed in state court [Docket No. 306, page 3, ¶11], and attached a copy of the complaint as an exhibit to its motion [Docket No. 306-1]. Thus, PRAPI's own exhibit shows that they are coercing the Debtor, though a legal proceeding, to pay debts and obligations which were discharged by this Court.

10

6.5 In the case in state court –as it can be seen by the copy of the complaint submitted by PRAPI –PRAPI is requesting that the San Juan Court grants them the payoff balance of the obligations signed by the Debtor prior to the confirmation of the plan; obligations which were discharged. They are requesting a total of principal balance of **$2,249,865.40**, when the total principal obligation pursuant to the confirmed plan was **$1,878,151.00**. [See Docket No. 306-1, page 8 at ¶19; page 12 at ¶29; page 14 at ¶38, page 16 at ¶46 and 50; and page 17 at ¶54],

6.6 Additionally, according to the Confirmed Plan, PRAPI was only entitled to an interest rate of 5%, yet in state court they are requesting the interest of each pre-petition loan, plus default interest rates which was **not contemplated in the Confirmed Plan**. [See Docket No. 306-1, page 6 at ¶11; page 9 at ¶21; page 12 at ¶31, page 14 at ¶40; and page 16 at ¶48]. Thus, PRAPI is attempting to collect a total of $693,248.84.

6.7 Furthermore, the Debtor's pre-confirmation obligations with PRAPI contemplated that the Debtor would provide attorney's fees in case that PRAPI would need to commence a legal proceeding to collect and foreclose on its collateral. Nevertheless, this obligation was not preserved by the Confirmed Plan, and therefore, it was discharged. Notwithstanding the aforesaid, PRAPI moved the San Juan Court to enforce the pre-petition contractual obligation to provide for attorney's fees. [See Docket No. 306-1, page 8 at ¶11; page 12 at ¶29; page 14 at ¶38, page 16 at ¶46 and ¶50]. In fact, PRAPI is requesting a total of **$530,642.60**, when the attorney's fees obligation was discharged by the confirmation of the plan.

6.8 The proven fact that PRAPI was notified of the confirmation of the Debtor's Plan, and that they filed a complaint to coerce the Debtor into paying pre-petition

11

obligations not provided for in the Confirmed Plan clearly satisfies the objective standard for civil contempt; yet, PRAPI's conduct has gone beyond this test as PRAPI has recklessly and blatantly disregarded the Court's Confirmation Order.

6.9     After the Debtor received service of summons of the complaint in the San Juan Court, it answered the complaint, and informed PRAPI that the Debtor's only liability towards them is what the Confirmed Plan states. Furthermore, the undersigned met with PRAPI's legal counsel on September 4, 2015, and again, the Debtor insisted that the only collectable debts are the ones stated in the Confirmed Plan.

6.10    Notwithstanding the Debtor's good faith efforts, PRAPI never amended its complaint; in fact, a hearing was held on November 3, 2015 in the San Juan Court and PRAPI, through their legal counsel, **insisted on the collection of all pre-confirmation obligations**. Thus, PRAPI is very well aware of this Court's Confirmation Order and its effects, and yet it has shown a reckless disregard of such order.

## VII.    REQUESTED RELIEF

7.1     In view that PRAPI knowingly and willfully violated this Court's Confirmation Order, and their blatant disregard of the Debtor's good faith efforts to resolve the issue off-court, the Debtor requests that this Honorable Court awards the Debtor an amount no less than $10,000.00 in actual damages; $5,000.00 in coercive damages, $10,000.00 in punitive damages and $5,000.00 in attorney's fees.

7.2     Case law has established that sanctions in civil contempt proceedings may be employed for two purposes: (1) to coerce the defendant into compliance, and (2) to compensate for the losses sustained. Green Point Credit LLC v. Mc Lean (In re: McLean), 794 F.3d 1313, 1323 (11th Cir. 2015).

7.3     Due to PRAPI's violation of the discharge injunction, the Debtor has had to dedicate time and effort in defending itself, including the use of its management and accounting personal to refute PRAPI's contentions in state court. Therefore, the Debtor requests that this Court awards the Debtor $10,000.00 in compensatory damages. Additionally, the Debtor has had to incur in attorney's fees to defend itself against PRAPI's violations in state court, and also through this contempt proceeding, thus, the Debtor requests that this Court imposes PRAPI for the payment of the Debtor's attorney's fees in the amount of $5,000.00.

7.4     As for non-compensatory damages, these can be classified into coercive and punitive damages. Regarding to coercive sanctions, the sole purpose of which is typically to bring an end to an ongoing contempt. Punitive sanctions, on the other hand, take the form of a fixed fine and have no practical purpose other than punishment. *Id.* at 1324. Punitive damages are appropriate when a party acted with sufficient notice concerning the legal import of its offending actions. *Id.* quoting BMW v. Gore, 517 U.S. 559 574 (1996).

7.5     In the present case PRAPI violation to the Confirmation Order is ongoing as they are still attempting to collect in state court the discharged debt. The filing of such claims constitutes harassment against the Reorganized Debtor to pressure and coerce it to pay an uncollectable debt. Therefore, the Debtor requests that this Court awards the Reorganized Debtor $5,000.00 in coercive damages.

7.6     Furthermore, PRAPI's actions have been reckless enough for the Court to impose punitive damages. In this case PRAPI was duly notified of the Confirmation Order. In fact, in the complaint filed in state court, PRAPI mentioned that the plan was confirmed, and attached the Confirmed Plan and Confirmation Order as an exhibits and

specifically mentioned in its pleadings that the Plan was confirmed. [See Docket No. 306-1, page5, ¶6, and pages 20-56]; thus, PRAPI's violation was willful. After the complaint was filed the Debtor made PRAPI aware of its violation and yet PRAPI continued to pursue the collection of discharged debts. PRAPI's conduct was in a blatant and reckless disregard to this Court's Confirmation Order. Consequently, the Debtor requests a total of $10,000.00 in punitive damages.

7.7     This request for punitive damages is fair and equitable given the level of pressure that PRAPI has put on the Debtor to collect the discharged debt. Unlike other cases when creditors send collection letters or make collection calls which represent isolated events which the Debtor may choose to ignore, in this case PRAPI filed a complaint in state Court, it has used the Puerto Rico judicial system and coercive powers to pressure the Debtor into paying and uncollectable debt. This type of collection efforts may not be ignored and, thus, since June 12, 2015 (date in which the Debtor receives the service of summons) the Debtor has been subjected to the jurisdiction of state court in PRAPI's attempt to collect a discharged debt.

**WHEREFORE** the Debtor requests that this Honorable Court entertains the present motion, and that it finds PRAPI in contempt of the Confirmation Order issued by this Court and that it may also impose on PRAPI a total of $30,000.00 in damages in favor of the Debtor. The Debtor further moves this Court into entering an interim stay order, to temporarily stay PRAPI to proceed in state court against the Debtor for the discharged debt while this contested matter is being ruled upon by this Court.

**NOTICE**

Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**WE HEREBY CERTIFY** that on this same date I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system, which will send notification to all parties who have requested electronic notification. Additionally, this motion was served on PRAPI, pursuant to Rule 9014(b) to the name and person listed by PRAPI in its proof of claim for notices. An additional copy was also served by first class mail to PRAPI's legal counsel in this Court, Nayuan Zouairabani, Esq. and Hermann Bauer, Esq. PRAPI's attorney's in the proceeding in State Court, Pedro Ruiz, Esq. and Lourdes Santiago, Esq., were also notified by first class mail.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico, this 30th day of November 2015.

**GARCÍA-ARREGUI & FULLANA PSC**
252 Ponce de León Ave. Suite 1101
Citibank Towers
San Juan, Puerto Rico 00918
Telephone: (787) 766-2530
Facsimile: (787) 756-7800
E-mail: ifullana@garciaarreguifullanalaw.com
ecapdevila@garciaarreguifullanalaw.com


/s/Isabel M. Fullana
Isabel M. Fullana
USDCPR No. 126802

/s/Eduardo J. Capdevila
Eduardo J. Capdevila
USDCPR No. 302713

*Attorneys for the Debtor*